UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

DOMINIC F. AMOROSA,

                Plaintiff,

-against-

ERNST & YOUNG LLP,

                Defendant.

------------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/20/10

03 Civ. 3902 (CM)

## MEMORANDUM REGARDING CORRECTED DECISION DISMISSING PLAINTIFF'S COMPLAINT

McMahon, J.:

The Court is today issuing a corrected version of the decision dismissing plaintiff's complaint. Since no one has requested any amendment of the original decision, a word of explanation is in order.

One of the issues raised by plaintiff in opposition to Ernst & Young's motion to dismiss his complaint is whether or not plaintiff's lawsuit could be aggregated with similar pending lawsuits in order to meet the threshold for preempting any state law claims asserted therein. See Securities Litigation Uniform Standards Act ("SLUSA"), Pub. L. No. 105-353, 112 Stat. 3227 (1998) (codified in part at 15 U.S.C. § 77v(a)). Although courts customarily aggregate individual actions pending before them in order to determine whether SLUSA's fifty plaintiff threshold has been met, Amorosa argued that his action for damages could not be swept into the ambit of the term "covered class action" as defined in SLUSA. He reasoned that his lawsuit could not be aggregated with the other actions because it had been stayed by agreement of the parties pending the resolution of certain other actions. Indeed, plaintiff asserted, in his opposition to the

motion, that there was a "total lack of coordination" between his action and the rest of the AOL/Time Warner cases that had been referred to my predecessor, Judge Kram, by the Judicial Panel on Multidistrict Litigation ("JPML").

In describing the stay that was the cornerstone of plaintiff's "total lack of coordination" defense, this Court (a newcomer to the case) adopted shorthand terminology used by Ernst & Young in its moving papers: I said that Amorosa's case had been stayed in 2005 pending resolution of a motion to dismiss the complaints of the "Opt Out Plaintiffs" or "Lerach Plaintiffs," who were collectively represented by the law firm of Coughlin, Stoia, Geller, Rudman & Robbins LLP, f/k/a Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP. At no point while the motion to dismiss was *sub judice*—either in his opposition papers or in any letter of which this Court was made aware—did Amorosa or his attorney object to that characterization of the stay. Neither did he move for reconsideration or correction of the opinion on the ground that the stay on which he relied for his SLUSA preemption argument had been erroneously described by the Court.[1]

This being an action covered by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Pub. L. 104-67, 109 Stat. 737 (1995) (codified as amended in scattered sections of 15 U.S.C.), the defendant moved, not only for dismissal, but for the imposition of mandatory sanctions. Having granted the motion to dismiss, the Court asked for further briefing on the issue of sanctions. In his supplemental papers, Amorosa's counsel takes issue with the notion that he agreed, on behalf of his client, to a

---

[1] There was considerable debate between the attorneys for the two sides over who had asked for a stay in the first place; Amorosa took the position that counsel for AOLTW did, and Ernst & Young eventually conceded the point. However, as this Court explained in its earlier decision dismissing plaintiff's complaint, it does not matter who initially proposed the stay—it matters only that a stay was entered because Amorosa's complaint was virtually identical to complaints then-pending before the Court.

2

stay pending resolution of the "Lerach Plaintiffs'" cases. He argues that the cases brought by the Lerach firm (approximately 35 cases brought on behalf of 200 or so opt-out plaintiffs) had not even been filed when Amorosa agreed to stay his case; he insists that the stay to which he agreed applied only to the class action and to an opt-out case brought by an entity called Stitching Pensionenfonds ABP ("Stichting").

Upon reading this, the Court became concerned that its opinion might contain a factual error, and that plaintiff would attempt to exploit that error on appeal. Therefore, I undertook sua sponte to review the record, to see if anything about the stipulation in the opinion dismissing Amorosa's complaint needed to be corrected.

I have now reviewed the original stipulation, and I see that Mr. Gray agreed to stay Amorosa's action "until thirty (30) days after the Court resolve[d] the Motion to Amend [the class action complaint] and the Stichting Motions to Dismiss." Order Granting Stay ("Stay") at 2, Amorosa v. AOL Time Warner, Inc., 03 Civ. 3902 (S.D.N.Y. Aug. 5, 2005) (docket no. 5).

I have also reviewed the docket sheet, which reveals that all but one of the Lerach Plaintiffs' cases were sent to the Southern District of New York by the JPML after the date of the stipulation. (And the one Lerach case that was filed directly in the Southern District of New York—1199 SEIU Greater New York Pension Fund v. AOL Time Warner Inc., No. 06 Civ. 695 (S.D.N.Y. Jan. 30, 2006)—was filed after the date of the stipulation.)

Therefore, by its literal terms, the stipulation to which Amorosa's lawyer agreed could not have been provoked by the Lerach cases. Indeed, it appears to me that, once the consolidated class action received final settlement approval April 25, 2006, and the

3

Stitching case was voluntarily dismissed on June 1, 2006 (without adjudication of the motion to dismiss contemplated by the stipulation), the stipulation ceased to be operative at all.

However, it is obviously not the case that the stipulation ceased to be operative. Instead, it seems that Ernst & Young and Amorosa's attorney agreed to continue the stay until a motion to dismiss the Lerach Plaintiffs' opt-out complaints (rather than the Stitching opt-out complaint) was decided. How do we know this? Several ways:

(1) When Ernst & Young moved to dismiss the Lerach Plaintiffs' complaints on June 8, 2006, it did not simultaneously move to dismiss Amorosa's virtually identical first amended complaint.[2] Nor did Amorosa seek to have Ernst & Young held in default.

(2) Instead, Amorosa waited until March 13, 2007, and then moved for leave to amend his opt-out complaint a second time (see docket no. 6), by which point he had received the benefit of briefing on the motions to dismiss the Lerach Plaintiffs' complaints. That motion was granted on September 20, 2007, three months after Judge Kram dismissed the Lerach Plaintiffs' cases in AOL II, and he amended his complaint shortly thereafter. Ernst & Young's time to move or answer with respect to Amorosa's second amended complaint was then extended until January 18, 2008. At that time, Ernst & Young made the motion that was finally granted by this court on November 30, 2009.

(3) Most important, Amorosa—far from suggesting that no stay was operative—relied on its existence and affirmatively asserted that there was a stay as between him and Ernst & Young. The support for his claim that his case could not be aggregated with the class action and opt-out cases for SLUSA preemptions purposes was the stay—which, according to Amorosa and his attorney, meant that his case was not coordinated with the other opt-out cases by Judge Kram. That being so, plaintiff cannot now be heard to say that he never agreed to stay action in this matter pending resolution of the virtually identical Lerach Plaintiffs' cases—especially when events confirm that he did.

---

[2] The substantial identity between the second amended consolidated class action complaint, the Lerach Plaintiffs' Complaint and Amorosa's first and second amended complaints is discussed at length in the opinion dismissing this action, and need not be further recited here.

4

In an excess of caution, the Court has revised certain statements about the stay that are found in the opinion dismissing the complaint so that they are technically correct. In particular, I have replaced the phrase "Lerach Plaintiffs" with references to either the main class action plaintiffs or the Stichting opt-out plaintiff whenever I describe the stay. That way, in appealing dismissal of the action, Amorosa cannot argue that the Court misapprehended what was stayed or when.

Of course, none of this has any impact on the Court's determination that SLUSA preemption warrants dismissal of the state claims in Amorosa's complaint, for the reasons stated in that opinion. Nor does it have any impact on the imposition of PSLRA sanctions. Indeed, Amorosa's and Attorney Gray's actions (and inactions) in relation to their claims against Ernst & Young, coupled with their acquiescence in Ernst & Young's characterization of the stay, tends to confirm, rather than undercut, Ernst & Young's argument that Amorosa and his attorney have a practice of treading water pending the resolution of all the other cases, in the hope that some judge will conclude that his opt-out case should not be aggregated with other opt-out cases for SLUSA preemption purposes. As should be clear from the opinion dismissing Amorosa's complaint, I do not buy their argument.

The issue of sanctions will be addressed in a separate opinion issued simultaneously.

_____
U.S.D.J.

Dated: January 20, 2010

BY FAX TO ALL COUNSEL