UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

DOMINIC F. AMOROSA,
                Plaintiff,

                                     03 Civ. 3902 (CM)

-against-


ERNST & YOUNG LLP,
                Defendant.
----------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/20/10

### DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SANCTIONS

McMahon, J.:

## INTRODUCTION

Defendant Ernst & Young has moved pursuant to Federal Rule of Civil Procedure 11 for an award of sanctions against Amorosa's attorney (Christopher J. Gray, P.C.) for filing a frivolous lawsuit. The auditor has requested its reasonable attorneys' fees and costs incurred in bringing its motion to dismiss Amorosa's action, which the auditor estimates to be $34,950.

For the reasons set forth below, the auditor's motion for sanctions is granted, and sanctions in the amount of $10,000.00 are awarded.

## FACTS

The Court incorporates by reference the facts as set forth in the corrected decision and order granting defendant's motion to dismiss the complaint. See Amorosa v. Ernst & Young LLP, No. 03 Civ. 3902, slip op. (S.D.N.Y. Nov. 30, 2009) ("Amorosa"), as well as the memorandum explaining the correction, which is being filed simultaneously herewith.

In addition, the Court takes note of the following:

First, after Judge Kram dismissed portions of the consolidated opt-out complaint filed by by Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP (the "Lerach Complaint") on behalf of some 200 plaintiffs who opted out of the class action (who have heretofore been referred to as the "Lerach Plaintiffs")—including all but one of the claims raised against defendant Ernst & Young by pre-merger shareholders like Amorosa, see In re AOL Time Warner, Inc. Sec. Litig., 503 F. Supp. 2d 666 (S.D.N.Y. 2007) ("AOL II")—Attorney Gray, on behalf of his client, Dominic Amorosa, filed a second amended complaint (the "SAC"), which was virtually identical to the complaint dismissed in AOL II. As this Court has already concluded, any differences between the two pleadings are superficial, and the few changes made to the allegations against Ernst & Young did nothing whatever to cure the deficiencies in pleading loss causation that compelled Judge Kram to throw out the Lerach firm's claims against the accounting firm. Further, the one claim against Ernst & Young by pre-merger shareholders that could not be dismissed in AOL II— a Section 11 claim predicated on statements made by the auditor in connection with AOL's 1999 audit—could not be successfully prosecuted by Amorosa, because it was either barred by the relevant statute of limitations based upon the "corrective disclosures" pleaded in the SAC, or because the plaintiff incurred all of his losses *prior* to the date of the relevant corrective disclosure. See Amorosa, No. 03 Civ. 3902, slip op. at 32-33.

Second, Amorosa's attorney made legal arguments in opposing Ernst & Young's motion to dismiss that were patently frivolous. He asserted that the Supreme Court had overruled one of its own precedents and controlling case law from this Circuit— precedent that bar private rights of action by individuals who neither purchased nor sold

securities as a result of fraud, but merely held them during the period when the fraud was allegedly committed. See Amorosa, No. 03 Civ. 3902, slip op. at 28-31.

Third, this is the second time Mr. Gray has burdened a court in this District with repetitive litigation that had no chance of success. He did exactly the same thing in Ventura v. AT&T Corp., No. 05 Civ. 5718, 2006 WL 2627979 (S.D.N.Y. Sept. 13, 2006), that he did here—file an opt-out complaint on behalf of a client, defer resolution of that complaint pending a decision on whether to dismiss analogous (not to say, identical) claims asserted by other opt-outs, and then file an amended complaint that is identical in all *material* respects to the one that has already been dismissed.

Fourth, Mr. Gray has not been candid in some of his representations to this Court. When he opposed Ernst & Young's motion to dismiss Amorosa's state law claims as preempted by SLUSA, Mr. Gray argued that there had been a "lack of coordination between [Amorosa's] case and the Lerach opt-out actions." (Mem. in Opp. to Mot. to Dismiss ("MTD Opp.") at 25, Amorosa v. Ernst & Young LLP, No. 03 Civ. 3902 (S.D.N.Y. Feb. 14, 2008).) However, now that he is facing sanctions, Mr. Gray has changed his tune. Notwithstanding his previous "total lack of coordination" defense, he says that he based the claims presented in the SAC on, inter alia, "the judgment of some of the top plaintiffs' lawyers in the country at the Lerach firm . . . and the opinion the opinion of a well-respected expert, Bjorn Steinholdt (as set forth in Mr. Steinholdt's affidavit filed in the Lerach opt out cases)." (Gray Sanctions Resp. ("Gray Response") at 4, Amorosa v. Ernst & Young LLP, No. 03 Civ. 3902 (S.D.N.Y. Jan. 4, 2010).) He also represents that he sought leave to amend his client's complaint based directly on "discovery by plaintiffs' counsel in the Lerach opt-out actions." (Id. at 2.) In plain

3

English, Mr. Gray admits to a level of coordination with the other opt-out plaintiffs that makes it clear that his original argument to this Court was not true.

## DISCUSSION

### I. The Statutory Scheme

Rule 11(b) of the Federal Rules of Civil Procedure ("FRCP") sets forth the mechanism for sanctions, providing in relevant part that:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversing of existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information or belief.

The decision of whether to award sanctions under Rule 11 rests firmly within the discretion of the trial court. Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004).

However, in private securities actions, Rule 11 must be read in conjunction with the sanctions provisions of Private Securities Litigation Reform Act ("PSLRA"), which state, in relevant part:

> (c) Sanctions for abusive litigation
>
> (1) Mandatory review by the court

4

In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

(2) Mandatory sanctions

If the court makes a finding under paragraph (1) that a party or attorney violated any requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion, the court shall impose sanctions on such party or attorney in accordance with Rule 11 of the Federal Rules of Civil Procedure. Prior to making a finding that any party or attorney has violated Rule 11 of the Federal Rules of Civil Procedure, the court shall give such party or attorney notice and an opportunity to respond.

(3) Presumption in favor of attorneys' fees and costs

  (A) In general

  Subject to subparagraphs (B) and (C), for purposes of paragraph (2) [the mandatory sanctions provision], the court shall adopt a presumption that the appropriate sanction—

    (i) for failure of any responsive pleading or dispositive motion to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation; and

    (ii) for substantial failure of any complaint to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action.

  (B) Rebuttal evidence

  The presumption described in subparagraph (A) may be rebutted only upon proof by the party or attorney against whom sanctions are to be imposed that—

    (i) the award of attorneys' fees and other expenses will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden

5

>
> on the party in whose favor sanctions are to be imposed; or
>
> (ii) the violation of Rule 11(b) of the Federal Rules of Civil Procedure was de minimis.
>
> (C) Sanctions
>
> If the party or attorney against whom sanctions are to be imposed meets its burden under subparagraph (B), the court shall award the sanctions that the court deems appropriate pursuant to Rule 11 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(c).

The PSLRA requires district courts, at the conclusion of private actions arising under federal securities laws, to make Rule 11 findings as to each party and each attorney. See 15 U.S.C. § 78u-4(c)(1); see also Rombach v. Chang, 355 F.3d 164, 178 (2d Cir. 2004). Sanctions for the legal insufficiency or frivolousness of the complaint can only run against the attorney. See FRCP 11(c)(5) ("The court must not impose a monetary sanction: (A) against a represented party for violating Rule 11(b)(2)."); see also Baffa v. Donaldson, 222 F.3d 52, 57 (2d Cir. 2000) ("The district court also cannot order sanctions for violation of Rule 11(b)(2) against a represented party."). But both a represented party and his attorney can be sanctioned under Rule 11(b)(3) for the factual insufficiency of a complaint. See Oliveri v. Thompson, 803 F.2d 1265, 1274 (2d Cir. 1986) ("[A] sanction for attorneys' fees may be imposed either on the attorney who signs a paper, or on the party he represents, or on both."); Simpson v. Putnam County Nat'l Bank, 112 F. Supp. 2d 284, 291 (S.D.N.Y. 2000) (same).

The PSLRA eliminated the broad judicial discretion of Rule 11 ("the court *may* . . . impose sanctions") in favor of a rebuttal presumption: "Courts *shall* adopt a presumption that the appropriate sanction . . . for substantial failure of any complaint to

6

comply with any requirement of Rule 11 . . . is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." 15 U.S.C. § 78u-4(c)(3)(A)(ii) (emphasis added). If a violation is found, some sanction is mandatory. 15 U.S.C. § 78u-4(c)(2).

## II. Attorney Gray Committed a Substantial Violation of Rule 11

In Gurary v. Nu-Tech Bio-Med, Inc., 303 F.3d 212 (2d Cir. 2002), the Second Circuit articulated a three-step sanction inquiry for district courts to follow in situations where a plaintiff, like Amorosa, has brought multiple claims. See id. at 223. First, the Court must determine whether frivolous claims have been brought. Id. If they have been, the Court must determine whether non-frivolous claims were joined with those frivolous claims, and if so, "whether these claims—whatever their number—are of a quality sufficient to make the suit as a whole non-abusive and the Rule 11 violation not substantial." Id.

In this case, the claims asserted by Amorosa and Gray against Ernst & Young in the SAC were identical (except in ways already found to be immaterial) to claims against Ernest & Young that Judge Kram had already thrown out in AOL II. For that reason, the claims fall comfortably within the definition of "frivolous."

The Second Circuit has held that "an argument constitutes a frivolous legal position for the purposes of Rule 11 sanctions (FRCP 11(b)(2)), if, under the objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify, or reverse the law as it stands." Morley v. Ciba-Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995) (quoting Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 28 F.3d 259, 264 (2d Cir. 1994)). Accordingly, courts

7

in the Second Circuit have found sanctions appropriate in cases where a plaintiff files a claim that is clearly deficient—including, for example, cases where plaintiff's "counsel has engaged in a pattern of litigation designed to evade previous rulings" as evidenced by his filing of repetitive claims that had already been dismissed. See Pentagen Tech. Int'l Ltd. v. United States, 172 F. Supp. 2d 464, 473 (S.D.N.Y. 2001).

In Pentagen, the court awarded sanctions because plaintiffs' counsel "failed to demonstrate that he made any reasonable inquiry before deciding to sue." Id. at 471. The court based its finding in part on the fact that the attorney "should have know[n]" that at least one of his claims lacked merit in light of the fact that his two previous identical actions had been dismissed, and his new action was "based on the same facts and circumstances previously addressed" by the courts that had adjudicated his earlier claims. Id. Indeed, the court observed that "except for the addition of [one individual] as a plaintiff, the claims were factually identical." Id. at 473-74. Thus, the court explained, "the similarity between plaintiffs' claims here and those presented in [another of plaintiffs' actions] reflects a continuing intent to evade the rulings of courts in this district. Not only was this litigation frivolous and repetitive, therefore, but it was intentionally so." Id. at 474.

Here, as in Pentagen, the plaintiff has filed a repetitive suit. Hundreds of pages of the SAC were virtually and substantively identical to the Lerach Complaint that Judge Kram dismissed in AOL II. In fact, according to Mr. Gray's argument in his Response (to the sanctions motion), there are only two differences between the federal securities law claims asserted against Ernst & Young in the Lerach consolidated opt-out complaint and Amorosa's Second Amended Complaint: (1) the names of the plaintiffs; and (2)

8

paragraph 359, which is a slightly more detailed version of paragraph 329 of the Lerach Complaint. Both paragraphs 359 and 329 purportedly contain loss causation allegation. In both complaints, the "loss causation" allegations take the form of news articles and other publicly distributed statements that supposedly relate to accounting fraud at AOL/AOLTW. The pleadings' descriptions of the "disclosures" are accompanied by specific drops in stock price on the date each was released. Both paragraphs are flawed in exactly the same way: neither paragraph contains any allegations linking misconduct by Ernst & Young to fluctuations in AOL/AOLTW stock prices.

The next question in the substantial violation analysis is whether non-frivolous claims were joined with those frivolous claims, such that the violation of Fed. R. Civ. P. 11, while real, was not "substantial." As the Second Circuit explained in Gurary, a securities complaint may join frivolous claims to non-frivolous claims in a variety of ways, including a "combination of frivolous claims with . . . summarily dismissed claims that, while not legally frivolous, lack any merit." 303 F.3d at 221. When this situation arises, "a substantial violation occurs whenever the non-frivolous claims . . . are insufficiently meritorious to save the complaint as a whole from being abusive." Id. at 222. The Second Circuit has further instructed that "under this interpretation, the district court must examine the qualitative substance of the non-frivolous claims in order to assess whether these claims were, in fact, legitimate filings that had the potential of prevailing or whether they patently lacked merit and only narrowly avoided being deemed frivolous themselves." Id.

In this case, no non-frivolous claims were joined with the claims that Judge Kram has already dismissed. Therefore, there is no basis to find that the violation was insubstantial.

Mr. Gray argues that any violation of Rule 11 must be considered insubstantial "because of the substantial state law claims that were dismissed based on a novel interpretation of SLUSA [Securities Litigation Uniform Standards Act] pre-emption." (Gray Response at 9.) But the Court did not employ any "novel" interpretation of SLUSA in connection with the motion to dismiss Amorosa's pleading. As explained in greater detail in Amorosa, No. 03 Civ. 3902, at 37-46, SLUSA preempts state law claims asserted in "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—(I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii). This Court concluded that Amorosa's complaint had to be aggregated with the complaints of other opt-outs—including the 200 or so Lerach Plaintiffs, whose pleadings were *identical* to Amorosa's—for SLUSA preemption purposes, because his action was "joined, consolidated, or otherwise proceeded as a single action for any purpose" with those lawsuits. Amorosa designated his action as "related" to the AOLTW class action (which, in his own words, presented "identical" issues), and as a result, *his* case was assigned to the judge who was supervising the class action and lawsuits brought in various courts all over the country by some 200 other opt-outs (cases that were transferred to this court by the Judicial Panel on Multidistrict Litigation). One judge was assigned to this entire group of lawsuits precisely so that they could be handled in a coordinated manner. Why Judge Kram

10

acquiesced in counsel's agreement to let Amorosa stand on the sidelines while the rest of the opt-outs did the heavy lifting on the merits is irrelevant—and it certainly does not mean that his case was *not* "joined, coordinated or otherwise proceeded as a single action" with the rest of In re AOL Time Warner, Inc.

The fact that this Court reached a conclusion about SLUSA preemption different than Judge Stanton did when Mr. Gray last tried this tactic does not make this Court's interpretation of SLUSA "novel." See Ventura v. AT&T Corp., No. 05 Civ. 5718, 2006 WL 2627979 (S.D.N.Y. Sept. 13, 2006). The law says what it says. These inquiries are inherently fact-based. On the facts before me, the plaintiff himself caused his case to be "coordinated" with the rest of the AOL/AOLTW litigation. Furthermore, as Attorney Gray now admits, he relied on the work done by the attorneys for the other opt-outs, and consulted with those attorneys, in preparing his own case. He himself coordinated Amorosa's case with theirs for "any purpose"—he put himself in line behind them, and he capitalized on their work. That is all that is required for SLUSA aggregation.

Because Amorosa's claims against Ernst & Young in the SAC do not differ materially from claims that had already been dismissed by Judge Kram, and because there is no non-frivolous argument that Amorosa's case ought not be aggregated with the cases of the other opt-outs for SLUSA purposes, I find that Mr. Gray engaged in a substantial violation of Rule 11.

Mr. Gray also argues that he ought not be sanctioned because he filed the SAC in good faith, based in part upon the judgment of the Lerach firm, who he says, "thought that an amendment [to the Lerach Complaint] was feasible." (Gray Response at 2.) In support of his assertion, Mr. Gray has attached to his brief a letter sent by Michael Dowd

of the Lerach firm to Judge Kram on July 6, 2007. (Id. Ex.1.) In that letter, Mr. Dowd explains to Judge Kram the basis of the Lerach firm's proposed amendments to their complaint, which include new information obtained as a result of discovery in the case. (Id.) Mr. Dowd also explains that his proposed amended complaint "will add almost *100 pages of detailed allegations regarding EY's role in the misstatements* that were developed by plaintiffs' counsel in discovery and in related cases." (Id. Ex. 1 at 5 (emphasis added).)

This Court need not speculate on what would have happened if the Lerach Plaintiffs had filed the 100 pages of additional allegations described in Mr. Dowd's letter rather than settling their claims. What is relevant for our purposes is that Mr. Gray did not add 100 pages of additional allegations against Ernst & Young to his First Amended Complaint. As he admits in his Response, he revised one paragraph in the Lerach Plaintiffs' Complaint (paragraph 329), which eventually became paragraph 359 in his SAC. I have already found that Mr. Gray's revision of this paragraph is no better than superficial. See, e.g., Amorosa, No. 03 Civ. 3902, slip op. at 22, 33-37. The additional details he inserted would not, if proved, establish any liability on the part of the auditor. Nor does Gray's addition of the wholly conclusory statement that stock price movements occurred "due to news specific to AOLTW, and not explained by market or industry factors" (SAC ¶ 359) suffice to save his federal claims against Ernst & Young.

Moreover, Mr. Dowd clearly stated in his letter that the additional allegations would specifically address *Ernst & Young's role in the fraud*—one of the primary deficiencies that Judge Kram identified in the Lerach Complaint. See AOL II, 503 F. Supp. 2d at 679; see also id. at 675, 678, 680 (describing insufficient allegations in the

complaint). Mr. Gray does not argue, because he cannot, that paragraph 359—the only paragraph in the SAC containing "amplified" allegations against Ernst & Young—provides any new information regarding the *auditor's role* in the fraud. But that was the key deficiency he had to address in order for Amorosa's action to be anything other than frivolous in light of Judge Kram's dismissal of the Lerach Plaintiffs' claims against the auditor in AOL II. Thus, to the extent that Mr. Gray relied upon the opinions or advice of the Lerach firm, the revisions to his complaint clearly fell short of what that firm had proposed to do on behalf of its clients.

This Court also notes that Mr. Gray's representations regarding his relationship with the Lerach firm evidence bad faith insofar as he has failed to be entirely candid with this Court in connection with his claim that there was a "total lack of coordination" between Amorosa's case and this one. Mr. Gray now recalls that he actually relied a great deal upon the judgment of attorneys at the Lerach firm, as well as on the discovery they obtained during the prosecution of the consolidated opt-out cases. Mr. Gray clearly coordinated his actions with those of the Lerach Plaintiffs, by following their lead and relying on their work. Mr. Gray could have argued that this sort of informal coordination is insufficient for the purposes of SLUSA preemption, but he made no such argument, asserting instead that there had been a total "lack of coordination." In light of his later representations to this Court, this was clearly an intentional misstatement, one that supports a finding of bad faith on the part of counsel.

Finally, as the Pentagen court explained, the virtual identity between the complaint dismissed in AOL II and the one filed by Mr. Gray is enough to permit an inference of bad faith under Rule 11(b)(1), which requires that filings "not be[ ] presented

13

for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." See Pentagen, 172 F. Supp. 2d at 473-74. Therefore, the Court concludes that Mr. Gray has violated Rule 11(b)(1).

### III. Gray Rebuts the Presumption that Full Sanctions Should Be Imposed

Under the PSLRA, once a substantial violation of Rule 11 is found, a presumption attaches in favor of awarding the full amount of attorneys' fees incurred in connection with bringing motions to dispose of the frivolous filing. See Gurary v. Nu-Tech Bio-Med, Inc., 303 F.3d 212, 223 (2d Cir. 2002). However, the sanctions presumption may be rebutted if the Court determines that the violation was either de minimis *or* if the violator demonstrates that full sanctions would impose an unreasonable burden. Id.

The Second Circuit has explained that "de minimis" means something other than "not substantial," but it has provided little guidance on "how minimal the frivolous components of a suit must be, in themselves or perhaps in relation to the other parties' conduct, to constitute only a de minimis violation." See Gurary, 303 F.3d at 224. However, the Second Circuit has counseled that "the legislative history of the PSLRA makes clear that two claims out of four, without any other possible saving grace, is not enough" to rebut the presumption on the grounds that the violation was de minimis. Id.

There is no need to recite in great detail why this violation cannot be considered de minimis. Suffice it to say that Mr. Gray, having postponed adjudication of the viability of Amorosa's first amended complaint, had the benefit of Judge Kram's decision dismissing the other opt-out plaintiffs' claims against Ernst & Young. Nonetheless, he filed a Second Amended Complaint that made the very same allegations against Ernst & Young, almost *in haec verba*, without doing anything to remedy the failings of the

14

pleading that had already been dismissed: failure to allege loss causation or to link any movement in the stock price to a statement made by Ernst & Young. This put Ernst & Young and the Court to the expense (Ernst & Young) and trouble (the Court) of having to engage in an additional round of motion practice. The result of that motion practice might well have been cut short if Judge Kram had lived to decide the motion to dismiss Amorosa's complaint—she was, after all, fully familiar with the parties and the issues. But she was unable to dispose of the motion before she became ill, so this Court had to get up to speed on six years of litigation that had been conducted before another judge, and grapple with issues that, as it turned out, had already been decided.

So the only open question is whether the imposition of full sanctions would constitute an unreasonable burden.

Even where, as here, a substantial violation of Rule 11 is not de minimis, the statutory presumption in favor of an award of full attorneys' fees may be rebutted if it presents an unreasonable burden on the sanctioned party. In order to determine whether the presumption has been rebutted, the Court must both (1) consider the sanctioned party's financial statuts, and (2) "compare the burden on the sanctioned party to the burden placed on the victim of the litigation, given the victim's financial or similar status." Gurary, 303 F.3d at 221 (citing § 78u-4(c)(3)(B)). In making that comparison, the Court must consider whether "a partial award would [ ] 'impose a greater burden on the party in whose favor sanctions are to be imposed.'" Id. (citation omitted).

Mr. Gray has proffered evidence in camera about the financial condition of his law practice—principally in the form of federal income tax returns. He argues that "the sanction sought by [Ernst & Young], $34,950, represents a material sum relative to [his]

15

firm's annual revenues and profits in 2007 and 2008." (Gray Response at 6.) Mr. Gray contends, and Ernst & Young does not dispute, that from a purely financial standpoint, applying the statutory presumption would place little or no burden on Ernst & Young, a multinational accounting firm, while placing a significant burden on Mr. Gray, who appears to be a solo practitioner.

Mr. Gray also argues that "a substantial portion of the work performed by [Ernst & Young] in connection with the motion practice herein would have had to have been performed even if plaintiff had not asserted federal claims" (id. at 9)—in essence, a no harm-no foul argument. I reject this last argument out of hand. I know of no exception to PSLRA sanctions based on "what ifs" that do not involve federal litigation; the issue is whether Mr. Gray has imposed on *this* Court, as well as this defendant, by pursuing litigation that he had to know was meritless. Forcing this Court to work on his case needlessly delayed the timely resolution of other actions and unnecessarily imposed on limited judicial resources.

However, in view of Mr. Gray's financial condition, the full-fee-award presumption ought not apply—especially as Ernst & Young does not dispute that the burden of imposing full sanctions on a sole practitioner is greater (from a purely financial standpoint) than the burden of making a motion to dismiss on a huge multinational accounting firm. And here, the burden on Ernst & Young is even less than it might otherwise have been. The full fee sought by defendant ($34,950) is surprisingly low, given the typical hourly rates changed by large law firms in New York City for corporate/commercial litigation and the complexity of the federal securities issues implicated by the motion. This suggests that counsel for Ernst & Young did not reinvent

16

the wheel (so to speak) when confronted with Mr. Gray's complaint, but re-used work done in connection with its successful motion to dismiss the Lerach Plaintiffs' virtually identical complaint. Further, counsel for Ernst & Young have *not* included in their fee estimate: "fees relating to (a) research and drafting of the motion for sanctions; (b) attorney conferences related to the motion and reply; and (c) any time entry that was not unambiguously designated as relating to the motion to dismiss or reply brief." (Hubbell Decl., Dec. 8, 2009, ¶ 4 .)

But counsel's admirable effort to keep the cost to its client as low as possible does not translate into no sanction for Mr. Gray. Once the statutory presumption is overcome, the PSLRA provides that "the district court 'shall' only impose those sanctions that it 'deems appropriate' pursuant to Rule 11." Gurary, 303 F.2d at 226 n.6 (quoting § 78u-4(c)(3)(C)). The penalty for a violation is limited to what is reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by others similarly situated. See, e.g., Boyce Idlett v. Verizon Corp. Servs. Corp., No. 06 Civ. 975, 2007 WL 3355497, at * 2 (S.D.N.Y. Nov. 6, 2007).

In this case, there are many reasons to award a significant sanction. The first is that Mr. Gray is, as noted above, a repeat offender; this is not the first time he has engaged in maneuvers designed either to burden the courts with a frivolous "outlier" opt-out action or to extort an unwarranted settlement. Second, the fact that he filed a pleading virtually identical to one that had already been dismissed by Judge Kram,[1] making only the most insignificant effort to address the failings in the other opt-outs' consolidated complaint, and subjecting defendant and this Court to unnecessary and

---

[1] The only allegations in the SAC that are relevant for purposes of imposing sanctions are the allegations alleging wrongdoing by Ernst & Young, the party seeking sanctions.

17

redundant work, is another strike against him. Third, he engaged in what this Court views as chicanery to try to overcome SLUSA preemption of his state law claims. The Court concludes that a significant sanction is necessary in order to deter Mr. Gray from engaging in this behavior again. If he does not feel the full force of sanctions now, his track record suggests that yet another judge will end up considering a motion like this one in connection with some future matter.

Almost half of Ernst & Young's attorneys' fee request is attributable to the reply papers submitted after Mr. Gray made his unsuccessful arguments against dismissal. It was in those papers that the lawyers for the auditor had to do some new work, in order to respond to arguments made by Amorosa (through Mr. Gray) about why AOL II and SLUSA did not compel the dismissal of his claims as well. Sanctions geared toward reimbursing Ernst & Young for the cost of manufacturing those reply papers would be most appropriate.

Ernst & Young's lawyers say that they expended 31.10 hours, costing their client $16,106 dollars, to review Amorosa's papers in opposition to the motion to dismiss and prepare a reply. This number was calculated based upon the hourly rates for attorneys who assisted in preparing the motion, who billed at a rate of $320 to $520 for associates and $710 for partner time—rates that are reasonable in light of the caliber of the firm and complexity of the subject matter involved. See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., No. 02 MDL 1484, 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (Hourly rates of $515/hour for associates and up to $850/hour for partners, "though high, are not inordinate for top-caliber New York law firms ."); see also In re Gilat Satellite Networks, No. 02 Civ. 1510, 2007 WL 2743675, at *17 (E.D.N.Y. Sept. 18, 2007)

(finding that hourly rates ranging from $325 for associates to $725 for senior partners were reasonable).

Therefore, the ideal sanction would be an award of those fees in full. However, even that would impose a burden on Mr. Gray, and I believe that an award of $10,000 is sufficient to deter Mr. Gray from engaging in this sort of behavior in the future. That is the sanction I impose.

## **CONCLUSION**

This constitutes the decision and order of this Court. The Clerk of the Court is instructed to remove the motion for sanctions (docket no. 15) from this Court's docket, and to close the file.

Dated: January 20, 2010

_____
U.S.D.J.

BY FAX TO ALL COUNSEL